UNITED STATES of America, Plaintiff–Appellee,

v.

David EARNEST, Defendant–Appellant.

No. 97–1222.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1997.

Decided Nov. 14, 1997.

**908**

Amanda A. Robertson (argued), Office of the United States Attorney, Benton, IL, for Plaintiff–Appellee.

Patricia Littleton (argued), Carbondale, IL, for Defendant–Appellant.

Before CUMMINGS, FLAUM and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

On July 11, 1996, defendant David Earnest was convicted by a jury of conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846 and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). On January 23, 1997, defendant was sentenced by the Honorable J. Phil Gilbert to 420 months imprisonment. Defendant appeals, claiming (1) that the district court erred when it held that the prosecution did not violate its disclosure obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, (2) that the evidence was insufficient to support the jury's verdict, (3) that his due process rights were denied at sentencing, and (4) that the government failed to prove the cocaine base involved was "crack." Finding defendant's first three contentions without merit, we affirm. In light of this Court's recent decision in *United States v. Adams,* 125 F.3d 586 (7th Cir.1997), we remand on the issue of whether the cocaine base involved was crack.

**Background**

On May 1, 1996, agents from the Murphysboro, Illinois Police Department and the Federal Bureau of Investigation received a tip from Jennifer Unterfer that defendant Earnest and co-defendant Vida Humphries would be going to Chicago, Illinois, on May 1, 1996, to obtain crack cocaine to distribute in the Murphysboro area. Unterfer had been pur-chasing crack cocaine from the defendant and, in fact, testified that she had received crack cocaine from him on the previous evening. To confirm this information, police had Unterfer record a conversation with the defendant by means of a concealed tape recorder. During the conversation, Unterfer paid defendant $150 in satisfaction of a prior drug debt and defendant told Unterfer that he planned to travel to Chicago with Humphries on May 1, 1996, for the purpose of obtaining one ounce of crack cocaine.

On May 1, agents observed defendant and Humphries leave Murphysboro and proceed toward Chicago in Humphries' car and set up surveillance for their return.

On May 3, officers spotted the car returning and followed it into Carbondale. The car, driven by defendant and occupied by passengers Humphries, codefendant Earl Cunningham, Jr. and Michael Hooker, was stopped and searched pursuant to a valid search warrant. The agents discovered a substance concealed in the outside mirror on the driver's side of the car. Forensic scientist Ileana SuarezHale testified at trial that the substance was 45.4 grams of cocaine base.

Defendant was arrested and interviewed by law enforcement officers. Agents Robert Dueker and Brenn Tallent and Murphysboro Police Department Sergeant Philip Royster testified that defendant admitted that he had been involved with Humphries in the distribution of crack cocaine in Murphysboro. They further testified that defendant told them that he and Humphries, in addition to the recent trip, had made two other trips to Chicago for the purpose of obtaining crack cocaine for distribution in the Murphysboro area; and that according to defendant, he and Humphries could not obtain any crack cocaine on the first trip but obtained at least one and one-fourth ounce of crack cocaine on the second trip.[1] According to the agents, the defendant stated that he sold $20 and $50 "rocks" to customers in Murphysboro and confirmed that he had sold crack cocaine to Unterfer and had made arrangements to furnish her with more crack upon his return

---

1. One ounce is equivalent to 28.35 grams.

from his May 1 trip. Additionally, defendant told agents that because he could no longer purchase drugs from a particular drug source, Humphries would have to purchase the drugs in Chicago.

These admissions were corroborated by Humphries who admitted to agents and at trial that he and defendant had been obtaining crack cocaine in Chicago for distribution in Murphysboro. He stated that he and defendant had made three trips to Chicago and gave approximate dates for these trips. On the first trip, they brought back one ounce of crack cocaine, on the second trip, they brought about one-half ounce of crack cocaine, and on this past trip, they brought the cocaine which was discovered in the car's exterior mirror. Humphries stated that defendant was present when Humphries concealed the cocaine in the mirror. Furthermore, co-defendant Cunningham admitted that he was being brought to Murphysboro to aid defendant and Humphries in distributing crack cocaine.

At trial defendant admitted that he made three trips to Chicago with Humphries but denied that he admitted to agents involvement in distributing crack cocaine, denied that it was his voice on the recorded conversation with Unterfer, and denied that he knew there was crack cocaine in the car when it was stopped. In the face of defendant's denials, however, the court found the other witnesses credible and disbelieved the defendant.

At trial defendant also requested that the government produce a traffic ticket that remained in Humphries' car after the car was inventoried and impounded, claiming the government had an obligation to turn it over under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. According to defendant, the traffic ticket would have impeached Humphries' testimony by demonstrating that defendant was not in Chicago on the day Humphries had given as the approximate date of one of the pair's drug-buying trips. The district court ruled that the government's duty to disclose was not triggered because the government was not in possession of the ticket and the defendant

did not demonstrate that the ticket was exculpatory or material.

After a three-day trial, a jury convicted defendant of conspiracy to distribute and possess with intent to distribute cocaine base, and of possession with intent to distribute cocaine base.

The presentence investigation report concluded that defendant's relevant conduct involved approximately 80 grams of cocaine based on the amount seized from the vehicle (45.4 grams) and the one and one-fourth ounces that defendant admitted obtaining on a prior Chicago trip (35.4 grams). Overruling defendant's objection, the district court determined that defendant's relevant conduct was at least 50 grams of crack cocaine and more accurately up to 75 grams. The court based its calculation on the testimony of the agents regarding the admissions made by the defendant and the testimony of Humphries that the prior trips were made, noting that such an estimate was conservative. Defendant obtained a writ to secure the presence of Humphries at sentencing to question him about the trips to Chicago, but, due to bad weather, the United States Marshal's Service was unable to produce him. After reviewing a list of questions that defendant intended to ask Humphries and finding them cumulative of Humphries' trial testimony, the district court refused to delay sentencing. The court emphasized that it was not going to retry the case at sentencing, having already determined Humphries to be a credible witness.

The district court sentenced defendant to 420 months imprisonment. Defendant appeals, claiming that (1) the prosecution violated its disclosure obligation under *Brady v. Maryland* by not turning over the traffic ticket, (2) the evidence was insufficient to support the jury's verdict, (3) he was denied due process at sentencing, and (4) the government failed to prove the cocaine base involved was "crack." Regarding defendant's first three contentions, we affirm the district court's ruling. We remand on the issue of whether the cocaine base involved was crack based on this Court's recent decision in *United States v. Adams*, 125 F.3d 586 (7th Cir.1997).

## I. The Government's Alleged Violation of Brady v. Maryland

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–97. Furthermore, the Supreme Court has held that suppression of impeachment evidence can give rise to a *Brady* violation. *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104. To be entitled to relief under *Brady*, the defendant must establish "1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the defense; and 3) that the evidence was material to an issue at trial." *United States v. Silva*, 71 F.3d 667, 670 (7th Cir.1995).

Defendant argues that he is entitled to a new trial under *Brady* because the government failed to turn over a traffic ticket located in Humphries' car which defendant claims is relevant for impeachment purposes. Defendant's claim is without merit. To mount a successful *Brady* challenge, defendant first must show that the prosecution "suppressed" evidence. The obligation to disclose exculpatory or impeaching information under *Brady* is limited to information which is then known to the government. See *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir.1996), certiorari denied, —— U.S. ——, 117 S.Ct. 181, 136 L.Ed.2d 120; *United States v. Moore*, 25 F.3d 563, 569 (7th Cir. 1994), certiorari denied, 513 U.S. 939, 115 S.Ct. 341, 130 L.Ed.2d 297; *United States v. Young*, 20 F.3d 758, 764 (7th Cir.1994); *Mendoza v. Miller*, 779 F.2d 1287, 1297 (7th Cir.1985), certiorari denied, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697. In other words, there is no affirmative duty on the part of the government to seek information not in its possession when it is unaware of the existence of that information. *Morris*, 80 F.3d at 1169; *Moore*, 25 F.3d at 569. Furthermore, evidence is not regarded as "suppressed" by the government when the defendant has access to the evidence before trial

by the exercise of reasonable diligence. *Morris*, 80 F.3d at 1170; *United States v. Dimas*, 3 F.3d 1015, 1018–1019 (7th Cir. 1993); *United States v. White*, 970 F.2d 328, 337 (7th Cir.1992).

Defendant argues that the prosecution suppressed impeachment evidence by not turning over the traffic ticket. We disagree. The government did not have possession of the traffic ticket since it was in Humphries' car, which had been impounded. In addition, the government did not knowingly suppress the traffic ticket. The government was unaware of the existence and potential significance of the information on the ticket and, therefore, had no affirmative duty to seek such information not in its possession. See *United States v. Lockhart*, 956 F.2d 1418, 1425 (7th Cir.1992) (reasoning that if government does not know of a witness' conviction, prosecution cannot be said to "knowingly" suppress such information in violation of *Brady*). Furthermore, defendant is entitled to no relief based on this Court's precedent that the government will not be said to have suppressed evidence which the defendant could access before trial by the exercise of reasonable diligence. The defendant here was aware of the traffic ticket before trial yet made no effort to obtain it, which could have been done by securing Humphries' consent. See *United States v. Rodriguez–Andrade*, 62 F.3d 948, 952 (7th Cir.1995) (holding that report unknown to government could not be suppressed by government since defendant could have obtained report with subpoena before trial). Because the government did not have possession or knowledge of the information concerning the traffic ticket, defendant cannot prove that the government suppressed evidence.

Even if the government could have possessed the ticket by re-entering the car, there is no *Brady* violation because defendant did not establish that the ticket was favorable to his defense. Defendant objects to the fact that the judge did not delay the trial once defendant learned that the prosecution did not have the authority to retrieve the ticket from the car and accuses the trial judge of being "more concerned that the trial not be continued another day" (Appellant's

Br. at 14). The district court emphasized, however, that even if the ticket was obtained, the defendant did not sufficiently demonstrate that it would be exculpatory. Defendant's theory was that the traffic ticket was exculpatory because it might have been received by Humphries at a time when Humphries was in Chicago and defendant was not. Defendant provided no evidentiary support for this argument. He did not provide the dates that Humphries and defendant were in Chicago or the date that the traffic ticket was received. Humphries also was unable to provide specific dates that he and defendant were in Chicago. Without specific dates, the traffic ticket would be useless as an impeachment tool.

Furthermore, the information contained on the ticket, which presumably would provide a date that Humphries was in Chicago, was not known to the court because the defendant failed to offer the ticket into evidence even though he possessed it at the time of sentencing. See *United States v. Navarro,* 737 F.2d 625, 631 (7th Cir.1984), certiorari denied, 469 U.S. 1020, 105 S.Ct. 438, 83 L.Ed.2d 364 (reasoning that *Brady* claim is speculative when defendant gave no indication of existence of *Brady* material in file and contents of file were not made part of record). More significant, even if the dates Humphries was in Chicago were known, the ticket would still be practically useless as an impeachment tool. Concerning his trips to Chicago with defendant, Humphries only testified that "[a]lmost every time I've been to Chicago, he's been with me." Tr. at 173. The district court accurately noted that Humphries did not claim that defendant was with him all of the times that Humphries was in Chicago. Therefore, even if the ticket revealed that Humphries was in Chicago at a time when defendant was not, such a revelation would not be inconsistent with Humphries' trial testimony, thus providing no basis for impeachment. Because the ticket would not be useful for impeaching Humphries, defendant cannot establish that the traffic ticket was favorable to him.

Finally, to be entitled to relief under *Brady*, defendant must prove that the ticket is material to his defense. Evidence is mate-

rial only if there exists a "reasonable probability" that its disclosure to the defense would have changed the result at trial. *Lieberman v. Washington,* 128 F.3d 1085, 1092–93 (7th Cir.1997); *Silva,* 71 F.3d at 670. A reasonable probability of a changed result exists where the suppression of evidence "undermines confidence in the outcome of the trial." *Id.*

While it is true that suppression of evidence relevant for impeachment purposes can still give rise to a *Brady* violation, see *Giglio,* 405 U.S. at 153–54, 92 S.Ct. at 765–66, the evidence must be truly impeaching. Although defendant wished to impeach Humphries' credibility with the ticket, he provided no basis to impeach. Defendant's theory was that on April 16, 1996 (the date of the traffic ticket), when Humphries said he and defendant were in Chicago, defendant was actually in southern Illinois. However, Humphries was never asked on cross-examination whether he was in Chicago on April 16, 1996. He testified that he did not know the exact dates that he was in Chicago. Furthermore, as noted above, Humphries did not testify that defendant made every trip to Chicago with him, but rather that defendant traveled with him to Chicago most of the time. Because Humphries' testimony as to dates provided at best a minimal basis for impeachment with the traffic ticket, the alleged suppression of the ticket would not have constituted a *Brady* violation. In addition, even if Humphries' credibility was called into question, the ticket would not have affected the outcome of the trial because evidence besides Humphries' testimony supported the conviction. As this Court has noted, the effect that a particular piece of evidence is likely to have had on the outcome of a trial must be determined in light of the full context of the weight and credibility of all evidence actually presented at trial. Having personally observed the entire trial, the district judge is in the best position to make this determination. *Silva,* 71 F.3d at 670. The evidence of defendant's guilt, which included the testimony of the police and FBI agents and Jennifer Unterfer, was overwhelming. Therefore, the ticket would not have affected the trial's outcome and thus is immaterial.

Because it did not suppress material, exculpatory evidence, the prosecution did not violate its obligation under *Brady v. Maryland.*

## II. Sufficiency of Evidence Claim

■ Defendant argues that the evidence was insufficient to establish guilt on the charges of conspiracy to distribute and possess with intent to distribute cocaine base and possession with intent to distribute cocaine base. Sufficiency of the evidence challenges will be rejected if any rational jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Hall,* 109 F.3d 1227, 1238 (7th Cir.1997), certiorari denied, —— U.S. ——, 118 S.Ct. 153, —— L.Ed.2d ——. When a defendant challenges his convictions on sufficiency of the evidence grounds, this Court views all evidence and reasonable inferences therefrom in the light most favorable to the government. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560; *Hall,* 109 F.3d at 1238. After reviewing the record, we are satisfied that a reasonable jury could infer from the evidence that defendant conspired to distribute and possessed with intent to distribute cocaine base.

■ The evidence at trial established that Jennifer Unterfer had been purchasing crack cocaine from the defendant. Unterfer provided agents from the police department and FBI with information that defendant and co-defendant Humphries would be going to Chicago, Illinois, on May 1, 1996, to obtain crack cocaine for distribution. To confirm this tip, police had Unterfer record a conversation with defendant during which Unterfer paid the defendant for a prior drug debt and defendant informed Unterfer that he planned to travel to Chicago to obtain one ounce of crack cocaine. Police then observed defendant leave for Chicago.

When defendant returned, along with Humphries, co-defendant Cunningham, and Hooker, police officers stopped and searched the vehicle pursuant to a valid warrant, uncovering 45.4 grams of cocaine base in the driver's side exterior mirror.

During a post-arrest interview, defendant admitted to three different agents that he and Humphries were involved in the distribution of crack cocaine. Defendant also admitted that, in addition to the recent trip, he and Humphries had made two previous trips to Chicago to obtain crack cocaine to distribute. Finally, defendant admitted that he sold crack to Jennifer Unterfer.

Humphries corroborated these admissions. He admitted to agents and at trial that he and defendant were involved in the distribution of crack cocaine. He admitted that he and defendant had made three trips to Chicago to obtain crack. Humphries also stated that he showed the defendant the crack in the car mirror and asked his opinion regarding the hiding place.

Co-defendant Cunningham, who was in the vehicle when it was stopped, testified that he was being brought to Murphysboro to aid defendant and Humphries in distributing crack cocaine.

While defendant denied that he admitted to agents involvement in distributing crack cocaine, that it was his voice on the recorded conversation with Unterfer, and that he knew there was crack cocaine in the car when it was stopped, the court concluded that the witnesses were credible and that defendant was not telling the truth. Specifically, the court stated:

> [T]he jury [had] to have found Mr. Humphries to be a credible witness. I find him to be a credible witness. I find Miss Unterfer to be a credible witness, not only at trial, but my observations today before this Court. And then when you factor that in with the testimony of Agent Tallent and Officer Royster, and what they say was a confession made by the defendant which the defendant now recants, the overwhelming evidence is that the defendant is not being accurate with his recitation of the facts of this case.

Sentencing Tr. at 70–71.

In contending that the evidence is insufficient to support his convictions, defendant is attempting to reargue and reweigh the evidence on appeal. Specifically, in his brief, defendant tries to cast doubt on Humphries'

testimony by pointing out that only on the day before trial did Humphries tell the agent that defendant knew the drugs were in the car mirror. Defendant also tries to cast doubt on the testimony of the agents who interviewed defendant by arguing that their responses were "conclusory" and, therefore, that "no statement by defendant as testified to by the officers should be used to place defendant in the conspiracy." Appellant's Br. at 18. However, the district court found these witnesses to be credible, and this Court has repeatedly stated that "[t]he credibility of witnesses is peculiarly within the province of the jury and our review of credibility is prohibited absent extraordinary circumstances." *Moore*, 25 F.3d at 567 (quoting *United States v. Noble*, 754 F.2d 1324, 1332 (7th Cir.1985), certiorari denied, 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51); see also *Hall*, 109 F.3d at 1238; *United States v. Griffin*, 84 F.3d 912, 927 (7th Cir.1996) ("It is for the jury—not the court of appeals—to judge the credibility of witnesses, and attacks on witness credibility are insufficient to sustain a challenge to the sufficiency of the evidence."), certiorari denied *sub nom. Rux v. United States*, —— U.S. ——, 117 S.Ct. 495, 136 L.Ed.2d 387, and certiorari denied *sub nom. Scurlock v. United States*, —— U.S. ——, 117 S.Ct. 536, 136 L.Ed.2d 421. Because the district court found the witnesses credible, defendant cannot now, on appeal, ask this Court to disbelieve them.

Viewing the evidence in the light most favorable to the government and deferring to the district court's assessment of the credibility of the witnesses, a rational jury could have found defendant Earnest guilty beyond a reasonable doubt. Therefore, this Court finds the evidence sufficient to support the defendant's convictions for conspiracy to distribute and possession of cocaine base.

### III. Due Process Claim

■ Defendant next claims that he was denied due process at sentencing when the trial judge denied him an opportunity to present testimony on relevant conduct. Specifically, defendant argues that his due process rights were violated when the district court refused to delay the sentencing so that Humphries, unable to be there due to inclement weather, could be present. Had he been able to examine Humphries concerning the traffic ticket, defendant Earnest contends, he could have undermined Humphries' credibility as to whether defendant Earnest customarily accompanied him on cocaine-buying trips to Chicago. After perusing the questions that defendant Earnest planned to ask Humphries, the district judge concluded that the examination would add nothing significant to Humphries' trial testimony. The court therefore refused to delay sentencing until Humphries could arrive and testify.

■ Due process requires both that a defendant receive the procedural protections appropriate to the sentencing determination and that he be sentenced on the basis of reasonably reliable information. *United States v. Campbell*, 985 F.2d 341, 348 (7th Cir.1993). As to the first of these requirements, defendant Earnest's claim is essentially that he was denied the right to challenge information that was used in determining his sentence. Evidence presented in another proceeding may be used for sentencing so long as the defendant has an opportunity to rebut the evidence or generally question its reliability. *United States v. Linnear*, 40 F.3d 215, 219 (7th Cir.1994). By receiving defendant's proffer as to what he hoped to prove via Humphries' further testimony, the trial court did all that was necessary under the circumstances to afford Earnest due process. As noted previously, the district court was undoubtedly justified in concluding that the traffic ticket provided minimal if any impeachment of Humphries. Moreover, the court had already concluded that Humphries' trial testimony was credible. Due process did not demand that the court delay sentencing in order to allow the useless and duplicative examination that defendant Earnest desired.

■ As to the second possible due process violation-based on a claim that the evidence on which his sentence was based was unreliable—defendant Earnest fares no better. To mount this sort of due process claim successfully, defendant must show that the information before the court was inaccurate and that the court relied on it. *Campbell*,

985 F.2d at 348 (quoting *United States v. Musa*, 946 F.2d 1297, 1306 (7th Cir.1991)). Because the district court based its relevant conduct determination on reasonably reliable information, defendant's due process claim fails on this ground as well.

Defendant argues that the evidence presented regarding the quantity of drugs came from untrustworthy witnesses. To prove the unreliability of Humphries' trial testimony concerning the pair's drug-buying trips to Chicago, defendant submitted two letters written by Humphries. Defendant also intended to rebut Humphries' trial testimony with the traffic ticket which defendant, as stated earlier, did not prove was useful as an impeachment tool and which defendant never even introduced into evidence at sentencing. Finally, defendant submitted a list of questions that he planned to ask Humphries during sentencing. The district court found that Humphries' presence was unnecessary because the subject matter of the questions had been covered at trial where Humphries had been found to be a credible witness.

The district court was correct in relying on Humphries' testimony at trial for relevant conduct issues at sentencing. Credibility questions like these are for the trier of fact to resolve in all but the most extraordinary circumstances. See *United States v. Taylor*, 116 F.3d 269, 274 (7th Cir.1997); *Anderson v. Bessemer City, North Carolina*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518. "It is well established that a sentencing court's credibility determinations are accorded exceptional deference." *Hall*, 109 F.3d at 1233 (quoting *United States v. Acosta*, 85 F.3d 275, 280 (7th Cir.1996)). The district court adequately assessed the reliability of the evidence, having had the benefit of viewing the demeanor of Humphries and the other witnesses at trial. As noted by this Court in *United States v. Golden*, 102 F.3d 936 (7th Cir.1996), "because we do not challenge the ability of the district court to hear and judge the credibility of witnesses, [defendant] faces an uphill battle in attempting to convince us that we should disbelieve the witnesses at trial. We will not reweigh evidence and evaluate the credibility of witnesses * * *. We will instead leave the credibility judgment to the 'sound discretion of the district court, which has the advantage of having observed the demeanor of the witnesses as they testified.'" *Id.* at 944–45 (quoting *Campbell*, 985 F.2d at 347); see also *Hall*, 109 F.3d at 1233 (finding district court did not fail to adequately assess witnesses' reliability at sentencing when court had the benefit of viewing witnesses at trial, including their cross-examinations); *Taylor*, 116 F.3d at 274 (finding no clear error where court relied on witnesses with prior felony convictions, prior drug use, and who were cooperating with the government, reasoning such circumstances were not unusual and finding no reason why court could not find these witnesses credible).

Having found Humphries to be a credible witness, the district court based the relevant drug quantity calculation on the 45.4 grams found in the car, the defendant's own post-arrest statements which admitted to purchasing one and one-fourth ounces on a previous trip (35.4 grams), and Humphries' statements regarding the previous trips. The district court's calculation of the quantity of drugs involved in an offense is a finding of fact to be reversed only for clear error. *Hall*, 109 F.3d at 1233. The court did not err in making this assessment. As noted above, the court was correct in relying on Humphries' testimony, having found him to be a credible witness. Furthermore, defendant fails to realize that the court did not even rely on Humphries' testimony but rather took a more conservative estimate, only including the quantities that defendant himself admitted even though Humphries' testimony would have attributed more cocaine to the defendant. See *United States v. Singleton*, 125 F.3d 1097 (7th Cir.1997) (finding no clear error in district court's determination of amount of cocaine when district court set out detailed analysis of trial testimony and made a rather conservative estimate of amount reasonably attributable to the defendants). Furthermore, in sentencing the defendant based on distributing and possessing the threshold amount of 50 grams of cocaine, the court found that defendant's relevant conduct was really at least 50 grams and actually up to 75 grams of crack cocaine. See *Golden*, 102 F.3d at 944 (finding the district court's estimate conservative in that

it could have been off by an entire kilogram, and defendant would still have fallen into the same base offense level).

In basing defendant's relevant conduct determination on the search of the vehicle and the admissions of both defendant and Humphries, the court used reasonably reliable information. Moreover, the court did not err in concluding that further testimony by Humphries at the sentencing stage was unnecessary. The court's sentence therefore did not violate defendant's right to due process.

### IV. Defendant's Contention that Government Did Not Prove Substance in Question was "Crack"

 In his appeal, defendant claims that he was convicted of conspiracy to distribute and possession with intent to distribute "cocaine base" but that the district court sentenced him as if he distributed "crack." Defendant argues that there is a distinction between cocaine base and crack and that the government failed to prove by a preponderance of the evidence that the substance in question was crack. In light of this Court's recent decision in *United States v. Adams*, 125 F.3d 586 (7th Cir.1997), which interpreted the 1993 amendment to the Sentencing Guidelines as requiring the government to prove by a preponderance of the evidence that the substance in question is crack, we remand this case for a hearing on whether the controlled substances based upon which defendant was sentenced were in fact "crack."

This Court has long recognized the distinction between powder cocaine and crack cocaine. The sentencing enhancement for crack in relation to that for powder cocaine, in terms of the drug weights corresponding to specific guideline levels, is 100:1. *Id.* at 590. Thus possession of one ounce of crack results in the same sentence as possession of 100 ounces of powder cocaine. *Id.* While the

sentencing scheme is well-established with respect to the distinction between "crack" and "cocaine powder," it has not always been clear with respect to the distinction between "cocaine base" and "crack." Until 1993, the Sentencing Guidelines did not define "cocaine base." *Id.* As a result, courts applied the interpretation that all cocaine base was to be treated as "crack," thus subject to a more severe sentence, and that only powder cocaine could be addressed under the more lenient sentencing schedule. *Id.* at 590–91.

In response to the interpretation by the courts that all forms of cocaine base should be treated as crack[2] and punished more severely, the Sentencing Commission amended the sentencing guidelines.[3] To clarify that a § 2D1.1 enhancement should apply only to the crack form of cocaine base, the 1993 amendment added a definition of "cocaine base." See U.S.S.G. § 2D1.1(c) note (D); see also *Adams*, 125 F.3d at 590–591; *United States v. Abdul*, 122 F.3d 477, 478–479 (7th Cir.1997). The definition presently found in the guidelines reads as follows:

"Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. § 2D1.1(c) note (D).

This Court recently had the opportunity to interpret the 1993 amendment to the Sentencing Guidelines in *United States v. Adams*. Recognizing a distinction between crack and cocaine base, this Court held that under the new definition of "cocaine base" found in the guidelines only the form of "cocaine base" which is "crack" is eligible for the enhanced sentence. *Adams*, 125 F.3d at 592. Therefore, the government must prove by a preponderance of the evidence that the defendant possessed "crack" if the sentence enhancement is to be applied. *Id.;* see also

---

**2.** This Court has recognized that crack is only one of several forms of cocaine base. *United States v. Abdul*, 122 F.3d 477, 478 (7th Cir.1997).

**3.** The Commission expressly stated that the purpose of the amendment was to address a conflict among the circuits as to the meaning of "cocaine

base" and explained that "forms of cocaine base other than crack (*e.g.*, coca paste * * *) will be treated as cocaine." U.S. Sentencing Guidelines Manual App. C, amend. 487 (1995); see *Abdul*, 122 F.3d at 479.

*United States v. James*, 78 F.3d 851, 858 (3d Cir.1996), certiorari denied, —— U.S. ——, 117 S.Ct. 128, 136 L.Ed.2d 77; *United States v. Munoz–Realpe*, 21 F.3d 375 (11th Cir. 1994). By limiting the sentence enhancement to cases in which the crack form of cocaine base is proved, we effectively narrowed the category of cases which are subject to the higher punishment. In *Adams*, this Court found that the government did not prove that the "crack" subcategory of "cocaine base" was involved and, therefore, that application of the crack enhancement was erroneous, reasoning that at his change of plea hearing, the defendant specifically objected to the government's characterization of "cocaine base" as "crack." [4] *Adams*, 125 F.3d at 592.

In reaching its result, this Court relied on *United States v. James* where the Third Circuit found a sentencing enhancement inappropriate when the government failed to prove by a preponderance of the evidence that the form of cocaine base defendant James sold was crack. *James*, 78 F.3d at 858. In that case, the government argued that the court need not reach the issue of the Guidelines' treatment of crack versus cocaine base because James waived his right to contest the enhanced sentence by admitting in the plea colloquy that he sold crack. *Id.* at 856. Noting that a waiver of rights must be knowing and voluntary, the court in James conceded that "[t]here can be no question that admissions to the court by a defendant during a guilty plea colloquy can be relied upon by the court at the sentencing stage." *Id.* However, the court noted that the controlled substance was always referred to as "cocaine base" in the indictment, the plea agreement, and by the court and the defendant in the plea colloquy. In fact, the only time it was referred to as crack was in a casual reference by the government in a discussion with the court regarding the quantity of cocaine base in determining James'

offense level. *Id.* Under these circumstances, the court found that the government's characterization of the contraband was not a sufficient admission by the defendant that he possessed and sold crack merely because he answered "yes" to the prosecution's description of the crime. *Id.* This Court agreed with the rationale of the Third Circuit that

> [g]iven the highly severe sentencing ratio of 100:1 for crack versus cocaine, James' sentence may vary dramatically depending on whether he sold crack or cocaine. We do not believe that, without more, the casual reference to crack by the Government in the colloquy with the court over [ ] the relevant quantity of cocaine base in determining James' offense level [ ] unmistakably amounted to a knowing and voluntary admission that the cocaine base constituted crack.

*Adams*, 125 F.3d at 591–92 (quoting *James*, 78 F.3d at 856).

Having found no waiver by defendant, the James court next addressed the issue of the Guidelines' treatment of crack versus cocaine. *James*, 78 F.3d at 856. The Third Circuit concluded that the Guidelines' definition of "cocaine base" as "crack" required the government to show by a preponderance of the evidence that the substance in question was actually crack, especially in light of the enormously high punishment at risk in this determination. *Id.* at 858. Finding that the government did not meet its burden, the court refused to apply the enhanced penalty. *Id.*

While the question of waiver is fact specific, the district court here never entered into an analysis of whether defendant Earnest waived his right to contest the enhanced sentence by admitting that the substance was crack. Both the district court and the government relied on *United States v. Booker*,

---

4. [Government attorney]: * * * [Defendant] was found with nine ounces of crack cocaine on his possession on May 25th, 1995. That converts to almost over 25 kilograms of powder cocaine under the conversion. * * * * If you want to look at just this offense, the nine ounces of crack convert to over 900 ounces of powder cocaine because of the 100–to–1 ratio, here.

[Defendant]: But that wasn't crack, it was base you know.
[Government attorney]: Crack is base.
[Defendant]: Oh yeah?
*Adams*, 125 F.3d at 590.

70 F.3d 488 (7th Cir.1995), certiorari denied, —— U.S. ——, 116 S.Ct. 1334, 134 L.Ed.2d 484, in determining that the evidence was sufficient to support an enhanced sentence, thus denying defendant Earnest an evidentiary hearing on whether the cocaine base was, in fact, "crack" for sentencing purposes. However, as this Court noted in *Adams*, reliance on *United States v. Booker* is misplaced. "In *Booker*, we did state that the amendment 'defines "cocaine base" as "crack"' but we actually applied the 1990 version of the guidelines. All of our analysis in *Booker* is directed to the meaning of 'cocaine base' under the guidelines pre–1993 amendment, which contained no definition. Thus that analysis is inapplicable here." *Adams*, 125 F.3d at 592.

Because defendant Earnest's sentencing hearing occurred prior to the date *Adams* was decided,[5] we remand this case to the district court to determine whether defendant waived his right to contest the enhanced sentence by admitting that the substance was crack and, if not, whether the government can prove by a preponderance of the evidence that the substance in question was crack. Unlike the situation in *James* where the indictment, the defendant, and the court at the plea colloquy spoke in terms of cocaine base, the indictment here charged defendant Earnest with the distribution and possession of "crack cocaine," defendant, counsel, and the court referred to the substance as crack cocaine at trial, witnesses testified that defendant was involved in distributing "crack cocaine," co-defendant Humphries admitted that he had been involved in crack cocaine distribution with the defendant, agents testified that defendant admitted involvement in crack cocaine distribution, and the court found that defendant had not testified reliably. See *United States v. Hall*, 109 F.3d 1227, 1236 (7th Cir.1997), certiorari denied, —— U.S. ——, 118 S.Ct. 153, —— L.Ed.2d —— (distinguishing *James* and holding that enhanced penalties based on distribution of crack cocaine were supported by the evidence when "[w]itness after witness testified that the substance defendants

distributed was 'crack'"). However, the laboratory analysis only reported the substance as "54.6 grams cocaine base" and defendant objected to use of the description "crack cocaine" at sentencing. Based on the relevant facts, the district court must determine whether these multiple repetitions of the word "crack" constitute a knowing waiver by defendant. If not, the government must prove by a preponderance of the evidence that the substance in question was crack. While this Court normally will not grant the government two opportunities to meet its burden of proof, a reopening of the record would be justifiable here because the government, at the original sentencing hearing, was clearly operating under the assumption that *United States v. Booker* was the relevant precedent and had no knowledge of this Court's decision in *United States v. Adams* since it was decided after defendant Earnest's sentencing hearing. See *James*, 78 F.3d at 859 (Stapleton, J., concurring).

The case is remanded solely with respect to the issue discussed in Part IV of this opinion. Otherwise, the judgment of the district court is affirmed.

---

5. This court decided *United States v. Adams* on September 24, 1997. Defendant Earnest's sentencing hearing took place on January 23, 1997.