151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
Eric D. NUNN, Defendant-Appellant.
 No. 97-3061.
 United States Court of Appeals, Seventh Circuit.
 Argued April 29, 1998.
Decided May 19, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 96-10035 Michael M. Mihm, Chief Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOEL M. FLAUM, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Eric D. Nunn was found guilty by a jury of possession of cocaine base (crack) with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Prior to sentencing, Nunn filed a post-verdict motion for judgment of acquittal on the ground that there was insufficient evidence presented to the jury to sustain his conviction. The district court denied the motion and sentenced him to 222 months' imprisonment to be followed by five years of supervised release. On appeal, Nunn argues that the district court erred in denying his post-verdict motion because there was insufficient evidence for the jury to find him guilty. We affirm.
 
 
 2
 At Eric's trial, he and the government each called several witnesses. Officer Jerry Bainter testified for the government that he was working with an informant named Ramoun Johnson.[1] Ramoun had been arrested for drug dealing and was cooperating with law enforcement agents pursuant to a plea agreement in an attempt to reduce his sentence. Ramoun provided the officers with a list of drug dealers that he claimed had previously provided him with cocaine. He agreed to contact these people and make arrangements to purchase drugs from them. A hidden video camera and audio transmitter were installed at Ramoun's residence to be used to record drug transactions. On December 19, 1995, officers gave Ramoun $560 and a blank video tape. The officers then conducted surveillance from about two blocks away, but still within sight of Ramoun's house.
 
 
 3
 At approximately 10:00 p.m., the agents, listening through the surveillance equipment, and heard Ramoun page Eric at 497-9316 and arrange for Eric to deliver a half ounce of cocaine in about 25 minutes. Officer Bainter testified that, at approximately 10:22, a car parked across the street from Ramoun's house and the driver entered the house. The individual remained in the house for approximately five minutes and then left. Officer Bainter testified that he could not identify the individual because he was wearing a large, black jacket with the hood up when he entered and exited the house.
 
 
 4
 Five minutes after the drug transaction took place, Ramoun met the officers at a prearranged location and delivered the cocaine and video cassette. The cocaine was rock-like and Michelle Dierker, a forensic scientist for the Illinois State Police, stated at trial that tests of the substance revealed that it was cocaine base, commonly referred to by its street name "crack."
 
 
 5
 Eric called as a witness, Paul Sheer, the warehouse manager at BAT Office Products, formerly known as Lincoln Office, where Eric was employed in December 1995. Sheer testified that the required uniform for Lincoln Office employees was navy blue pants, a white shirt with blue pinstripes, and a blue waist-length jacket. He also testified that it took approximately 20 minutes to get from Lincoln Office to Peoria, Illinois, where the Johnsons lived. Sheer testified that he worked during the first shift and that Eric worked the second shift, which was from 2:00 to 10:30 p.m. He testified that Vince Keefer was the second shift supervisor and that Eric's time sheet reflected that he worked until 10:30 on December 19, 1995. At trial, Keefer testified that Eric may have left as early as 10:00 and still have written down on his time sheet that he worked until 10:30. Keefer explained that Lincoln Office did not use a time clock and that employees filled out their own time sheets at the end of the week. Keefer also testified that he occasionally allowed his employees to leave 15-30 minutes early and that they would still sometimes receive credit until the end of the second shift.
 
 
 6
 When reviewing a challenge to the sufficiency of the evidence, this court considers the evidence in the light most favorable to the prevailing party, defers to the credibility determinations of the jury, and will overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. United States v. Hickok, 77 F.3d 992, 1002 (7th Cir.), cert. denied, 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996). In bringing a sufficiency of the evidence challenge, a defendant "faces a 'nearly insurmountable hurdle." ' Id. (quoting United States v. Teague, 956 F.2d 1427, 1433 (7th Cir.1992)).
 
 
 7
 At Nunn's trial, both Ramoun and his wife, Deanna Johnson, testified that they were sure that on December 19, 1995, Eric came into their residence and sold Ramoun a half ounce of cocaine base for $550. Ramoun also identified Eric as the individual on the video tape of the transaction. Eric argues that this testimony should be viewed with caution because both Ramoun and Deanna had previously been convicted of felony drug charges and that Ramoun was acting as an informant for the government pursuant to a plea agreement with the hope that his sentence would be further reduced. Eric further argues that Deanna's identification of him should be suspect because she had a relationship with him in 1992.
 
 
 8
 In challenging the credibility of these witness identifications, Eric is essentially asking this court to re-weigh or re-assess the witness testimony at trial. It is not appropriate for this court to assess the credibility of witnesses. United States v. Earnest, 129 F.3d 906, 913 (7th Cir.1997); United States v. Mojica, 984 F.2d 1426, 1435 (7th Cir.1993). "It is for the jury--not the court of appeals--to judge the credibility of witnesses, and attacks on witness credibility are insufficient to sustain a challenge to the sufficiency of the evidence." United States v. Griffin, 84 F.3d 912, 927 (7th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 495, 136 L.Ed.2d 387, and cert. denied, --- U.S. ----, 117 S.Ct. 536, 136 L.Ed.2d 421 (1996).
 
 
 9
 This court will discredit a jury credibility determination only if the defendant establishes that the testimony was incredible as a matter of law. United States v. Alcantar, 83 F.3d 185, 189 (7th Cir.1996). Testimony is incredible as a matter of law if "it would have been physically impossible for the witness to observe what he described, or impossible under the laws of nature for those events to have occurred at all." Id. However, a credibility determination will not be disturbed by this court even if the testimony is totally uncorroborated and comes from a paid government informant, admitted liar, large-scale drug dealer, convicted felon, or individual with a motive to provide evidence favorable to the government. Id.; United States v. Saulter, 60 F.3d 270, 275 (7th Cir.1995). Even though Ramoun and Deanna are convicted felons, and Ramoun was cooperating with the government, they both had an opportunity to observe what they described. Therefore, Eric has failed to establish that the testimony of Ramoun and Deanna was incredible as a matter of law and we will not reevaluate the jury's credibility determinations. Although the Johnsons' testimony, alone, is sufficient evidence to affirm the district court's judgment, Eric raises several other arguments.
 
 
 10
 Eric asserts that there was insufficient evidence for his conviction because none of the officers were able to identify him as the individual who made the drug sale and that both the video tape and audio recording of the transaction were of such poor quality that they could not facilitate an independent means of identification. He argues that the only officer who described the individual entering the Johnsons' residence prior to the drug transaction, Officer Bainter, stated that the individual "was wearing a big, long, black, hooded coat," with the hood pulled over his head. Eric attempts to argue that he was not this individual because he wore a blue jacket as part of his uniform and did not change after work on the night of the transaction. However, Officer Bainter's description is supported by Ramoun's testimony that Eric was wearing a "bulky black jacket" with the hood up when he came into his house, and Deanna's testimony that Eric had his hood up when he first entered their house.
 
 
 11
 Eric next argues that the evidence was insufficient because Officer Tim Moore stated that the car driven to the drug transaction was an older-model Buick that he thought was green. Eric presented the testimony of Mark Barrie, whom stated that Eric's car was light silver at the time of the transaction and not green. Despite this conflict in testimony about the color of the car, Officer Moore did observe that the license plate of the car was AWA 401. This license plate is registered to Eric and Barrie also testified that this was Eric's license plate. Therefore, despite the discrepancy over the color of the car, the license plate was undeniably registered to Eric.
 
 
 12
 Eric also argues that he could not have made the drug sale because Officer Bainter testified that Eric arrived at 10:22 and Eric's time sheet reflects that he was at work, at least a 20 minute drive from the Johnsons' house, until 10:30 that evening. However, the record does not support Eric's position. Eric's direct supervisor, Vince Keefer, testified that Eric may have left as early as 10:00 and still have written down on his time sheet that he worked until 10:30. Additionally, both Anissa and Yolanda Hamilton testified that Eric left work at 10:00 on the night of the transaction. Therefore, viewing the evidence in the light most favorable to the government, there was testimony and evidence that would have allowed the jury to conclude that Eric had left work at about 10:00 and had time to briefly stop at the Johnsons' house to sell drugs before going to a birthday party at the Hamiltons' house.
 
 
 13
 There is also additional evidence that supports Eric's conviction. Ramoun stated that the pager number that he called to contact Eric to arrange the drug transaction was 497-9316. Erica Nunn, Eric's sister, testified that she obtained a pager with that number in 1993 in her sister's name, Tamara, and that she shared the pager with Eric. Eric's manager, Keefer, also testified that Eric sometimes wore a pager at work and that whenever he had to contact Eric he would page him at that same number. Viewing the evidence in the light most favorable to the government and deferring to the jury's assessment of the witnesses' credibility, a jury could have found Eric guilty beyond a reasonable doubt.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 As several individuals have the last names Nunn and Johnson, for simplicity's sake they are referred to by their first names