In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1170

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONDELL FREEMAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 07-cr-00843 — **Joan H. Lefkow**, *Judge.*

ARGUED NOVEMBER 12, 2015 — DECIDED MARCH 9, 2016

Before BAUER, FLAUM, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* In 2009, Rondell Freeman and several codefendants were convicted on various counts stemming from their participation in a Chicago drug conspiracy. After learning that the government had knowingly used false testimony at trial, the district court vacated the defendants' convictions on the conspiracy charged in Count 1 of the indictment. The government appealed, and we affirmed in *United States v. Freeman*, 650 F.3d 673 (7th Cir.

2011). But the district court also left intact the defendants' convictions on a number of other counts that incorporated the conspiracy charged in Count 1 as a necessary element.

The result was an anomaly: with the conspiracy count dismissed, how could the convictions dependent on the conspiracy's existence remain standing? We recently answered that question for two of Freeman's codefendants in *United States v. Wilbourn*, 799 F.3d 900 (7th Cir. 2015), where we held that the dismissal of the conspiracy count did not, by itself, necessitate dismissing the remaining counts encompassing the conspiracy. Like his codefendants before him, Freeman argues on appeal that the district court should have vacated his conspiracy-based convictions in light of its dismissal of the conspiracy charge. He also challenges his sentence. For the reasons that follow, we affirm.

## I. BACKGROUND

In 2007, Freeman and fourteen codefendants were indicted on numerous charges related to Freeman's operation of a drug ring at the now-razed Cabrini-Green housing projects in Chicago's Near North Side.[1] Freeman proceeded to trial and was convicted on multiple counts, including conspiracy to traffic narcotics (Count 1), possessing a firearm in furtherance of the conspiracy (Count 8, or the "gun count"), and using a telephone in furtherance of the conspiracy (Counts 4–5 and 16–18, or the "phone counts"). Several of Freeman's codefendants, including Brian Wilbourn and Adam Sanders,

---

[1] We thoroughly discussed the facts and circumstances underlying Freeman's convictions in both *Freeman* and *Wilbourn*, and we recount here only those facts necessary to explain the issues raised in this appeal.

were also convicted of conspiracy and related offenses based on their involvement in Freeman's drug scheme.

It eventually came to light that the prosecution had knowingly relied on false testimony from one of its main witnesses, Senecca Williams, to secure the defendants' conspiracy convictions. As a result, the district court dismissed the conspiracy count and vacated the conspiracy convictions for all defendants, and we affirmed. *Freeman*, 650 F.3d at 683--84. At the same time, the court found that Williams's false testimony did not materially affect the jury's guilty verdicts on a number of other counts that embraced the conspiracy, including the gun and phone counts against Freeman. The judge therefore denied Freeman's motion for a new trial on those counts, and proceeded to sentence Freeman based on his remaining undisturbed convictions.

In determining the amount of drugs attributable to Freeman under the Sentencing Guidelines, the district court relied primarily on the trial testimony of Ralph LaSalle. LaSalle testified that he supplied Freeman with at least one to two kilograms of cocaine per month over a period of about five years while the conspiracy was in effect. LaSalle testified that he typically supplied these drugs to Freeman through a middleman named David McClinton. In its May 2013 sentencing order, the court found LaSalle's testimony credible and conservatively estimated that Freeman was responsible for 8.4 or more kilograms of cocaine base, 100 grams of heroin, and 53.8 grams of marijuana, which resulted in a base offense level of 34. The court expressly declined to consider any of Senecca Williams's testimony to determine Freeman's relevant conduct for sentencing purposes.

Before the final sentencing hearing in December 2014, Freeman filed a supplemental affidavit signed by David McClinton, the purported intermediary between Freeman and LaSalle. McClinton acknowledged that he was a former associate of LaSalle, but contrary to LaSalle's testimony, denied that he had ever engaged in any drug transactions with Freeman. McClinton also stated that LaSalle had once confided to him that he "was going to lie about [Freeman] to get out of jail." At the sentencing hearing, Freeman urged the court to reconsider its drug-quantity calculation in light of McClinton's affidavit. Freeman also brought McClinton to the hearing to testify. The court considered the statements in McClinton's affidavit and the purpose for which his proposed testimony was being offered, but ultimately continued to find LaSalle's trial testimony credible and so concluded that McClinton's testimony was unnecessary. The court stated:

> I would, if I heard from [McClinton], have no basis to say he's more believable than Mr. LaSalle. And Mr. LaSalle sat here, and the jury heard him testify, and assessed his credibility, and I heard him too. And the jury believed him enough to convict based on his testimony. And I relied on his testimony in determining the drug amount.

McClinton did not testify at the hearing, and the court reaffirmed its earlier drug-quantity calculation of May 2013 and sentenced Freeman to 164 months in prison.

On appeal, Freeman challenges the district court's denial of his motion for a new trial on the gun and phone counts, arguing that the court's dismissal of the conspiracy charged

in Count 1 required the concomitant dismissal of the related charges that included the conspiracy as a necessary element. He further argues that the district court violated his right to due process at sentencing by basing its drug-quantity determination on the unreliable testimony of LaSalle, and by refusing to allow McClinton to testify at the sentencing hearing.[2] We consider each argument in turn.

## II. ANALYSIS

### A. Freeman's convictions on the gun and phone counts

We review de novo a district court's denial of a motion for acquittal, *United States v. Dvorkin*, 799 F.3d 867, 879 (7th Cir. 2015), and the denial of a motion for a new trial for abuse of discretion, *United States v. Whiteagle*, 759 F.3d 734, 756 (7th Cir. 2014). *See also United States v. Murphy*, 406 F.3d 857, 861 (7th Cir. 2005) ("[A] trial judge should reverse a jury verdict only if, viewing the evidence in the light most favorable to the prosecution, the record contains no evidence on which a rational jury could have returned a guilty verdict.").

Freeman was convicted on one count of knowingly possessing a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c), and on five counts of knowingly and intentionally using a telephone to facilitate the commission of a narcotics offense, in violation of 21 U.S.C. § 843(b). Under each of these statutes, proof of the predicate drug offense is an element that must be proven beyond a reasonable doubt. *See* 18 U.S.C. § 924(c); 21 U.S.C. § 843(b);

---

[2] Initially, Freeman also challenged the manner in which the district court addressed a report of premature jury deliberations, but he abandoned that issue at oral argument in light of our holding in *Wilbourn* that the district court properly handled the matter. *See* 799 F.3d at 913–14.

*see also Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000). A conviction for the predicate offense, however, is not required. *See Young v. United States*, 124 F.3d 794, 800 (7th Cir. 1997), *as amended* (Aug. 22, 1997) ("Many statutes build on predicate offenses whether or not the defendant is or has been convicted of the other crimes.").

According to Freeman's indictment, the drug conspiracy charged in Count 1 is the predicate offense for the gun and phone counts. Freeman contends that the district court's dismissal of the conspiracy charge necessitated the simultaneous dismissal of the remaining charges that were factually and legally dependent on the existence of the conspiracy. He thus argues that he was entitled to acquittal (or a new trial) on the gun and phone counts once the predicate conspiracy charge was dismissed.

Two of Freeman's codefendants recently raised the same argument in *Wilbourn*. Like Freeman, codefendants Wilbourn and Sanders were convicted on one count of participating in the Freeman drug conspiracy, as well as several phone counts that included the conspiracy as a predicate offense. In considering their argument that the district court erred by dismissing the conspiracy count while leaving the phone counts undisturbed, we began by explaining that the district court's decision to dismiss the conspiracy count served at least two distinct purposes. *Wilbourn*, 799 F.3d at 911–12. On one level, the dismissal of the conspiracy charge negated the effect of Williams's false testimony on the defendants' conspiracy convictions. *Id.* On another level, it served as an appropriate discretionary remedy for the prosecutor's misconduct in knowingly using false testimony at trial. *Id.*

We next observed that, since Williams's false testimony did not affect the defendants equally, the district court's blanket dismissal of the conspiracy count for all defendants did not necessarily serve the same purpose in each instance. *Id.* Where a defendant would have been properly convicted of the conspiracy count even without Williams's false testimony, for example, the dismissal of the count for that defendant primarily served the end of redressing prosecutorial misconduct. *See id.* The dismissal of the conspiracy count for a particular defendant did not necessarily mean that there was insufficient evidence to establish his involvement in the predicate conspiracy apart from the false testimony. Therefore, the mere dismissal of the conspiracy count did not automatically dictate the collateral dismissal of the remaining counts based on the conspiracy. *Id.* Rather, the pivotal question in determining whether a particular defendant's conspiracy-based convictions should have been vacated was whether that defendant's participation in the underlying conspiracy was necessarily established by Williams's false testimony, or whether instead there was sufficient independent evidence, apart from the false testimony, to prove the predicate conspiracy for that defendant beyond a reasonable doubt. *Id.*

Applying that standard, we held that the district court should have dismissed Wilbourn's convictions on the phone counts because the government could only prove his participation in the predicate conspiracy by relying on Williams's demonstrably false testimony. *Id.* By contrast, we held that the district court properly refused to vacate Sanders's phone-count convictions because his involvement in the underlying conspiracy was independently established by evidence unrelated to the false testimony. *Id.* at 912–13. In so

holding, we noted that the district court's dismissal of the conspiracy charge against Sanders owed more to the interest of providing an adequate remedy for prosecutorial misconduct than to that of eliminating a verdict secured by bad evidence. *Id.*

Our precedent in *Wilbourn* frames the issue on appeal. We must determine whether Freeman's convictions on the gun and phone counts fundamentally depended on the false testimony of Williams, or whether those convictions (including the underlying conspiracy on which they were based) were sufficiently supported by independent evidence to establish Freeman's guilt beyond a reasonable doubt. We conclude that the government adequately proved Freeman's guilt apart from Williams's false testimony.

Although Williams certainly linked Freeman to the relevant drug scheme, Freeman's participation in the predicate conspiracy was also clearly established by a wealth of additional evidence—including video and audio surveillance, recorded phone conversations, various witness accounts, and numerous seizures and garbage pulls—all of which demonstrated that Freeman actively oversaw the manufacture, packaging, and distribution of narcotics at Cabrini-Green. The phone counts were based on Freeman's recorded telephone conversations about the purchase of a firearm and the assessment of drug proceeds, while the gun count was based on a video recording that showed Freeman receiving a gun in the very location where he had packaged drugs with his accomplices earlier that day. These recordings, together with the other reliable evidence of record, suffice to establish beyond a reasonable doubt that Freeman used a phone and

possessed a gun as alleged in the indictment, and that he did so in furtherance of the conspiracy charged in Count 1.

Like its dismissal of the conspiracy charge against Sanders, the district court's decision to vacate Freeman's conspiracy conviction was primarily ordered toward redressing prosecutorial misconduct, rather than clearing a verdict obtained by false testimony. Accordingly, we affirm the district court's denial of Freeman's motion for a new trial (or acquittal) on the gun and phone counts.

## B. Sentencing Challenges

At sentencing, the district court relied primarily on the testimony of Ralph LaSalle to find that Freeman was responsible for 8.4 or more kilograms of cocaine base. Freeman argues that this finding was clearly erroneous because LaSalle's testimony was not sufficiently reliable. He further contends that the district court erred by refusing to allow David McClinton to testify at the sentencing hearing concerning the statements in his affidavit, which contradicted LaSalle's testimony about his drug transactions with Freeman. Both of these arguments ultimately relate to the district court's drug-quantity determination, so we begin there.

### 1. Drug Quantity

A district court's calculation of drug quantity is a finding of fact that we review for clear error. *United States v. Austin*, 806 F.3d 425, 430 (7th Cir. 2015). The government must prove the quantity of drugs attributable to a defendant "only by a preponderance of the evidence." *United States v. Galbraith*, 200 F.3d 1006, 1011 (7th Cir. 2000). In a drug conspiracy, the defendant is responsible "not only for drug quantities directly attributable to him but also for amounts involved in

transactions by coconspirators that were reasonably foreseeable to him." *United States v. Turner*, 604 F.3d 381, 385 (7th Cir. 2010) (internal marks omitted).

Determining the amount of drugs attributable to a defendant is "not an exact science." *United States v. Griffin*, 806 F.3d 890, 892–93 (7th Cir. 2015) (internal marks omitted). The district court is "entitled to estimate drug quantity using testimony about the frequency of dealing and the amount dealt over a specified period of time." *United States v. Hernandez*, 544 F.3d 743, 746 (7th Cir. 2008) (internal marks omitted). The information relied upon by the district court at sentencing must bear "sufficient indicia of reliability to support its probable accuracy." *United States v. Hankton*, 432 F.3d 779, 789 (7th Cir. 2005) (internal marks omitted).

Freeman first argues that the district court should not have relied on LaSalle's testimony to determine drug quantity because LaSalle was a convicted felon and drug user who stood to gain from his testimony and who had previously lied to the government to protect his own interests. This argument fails because the district court explicitly found LaSalle credible despite his shortcomings as a witness. *See* Dist. Ct. Dkt. 1176 at 41 ("LaSalle's testimony was subject to cross-examination and provides a credible estimate of the size and frequency of Freeman's drug purchases from early 2000 through April 2006.").

"Determining witness credibility is especially within the province of the district court and 'can virtually never be clear error.'" *United States v. Longstreet*, 669 F.3d 834, 837 (7th Cir. 2012) (quoting *United States v. Clark*, 538 F.3d 803, 813 (7th Cir. 2008)). Indeed, we have repeatedly said that a sentencing judge is entitled to credit testimony that is "totally

uncorroborated and comes from an admitted liar, convicted felon, or large scale drug-dealing, paid government inform-ant." *Clark*, 538 F.3d at 813 (internal marks omitted). Accord-ingly, we will not second-guess the district court's finding that LaSalle credibly testified on the narrow issue of drug quantity. *See United States v. Cox*, 536 F.3d 723, 730 (7th Cir. 2008) ("The testimony of Weir, judged by the district court to be credible, bore sufficient indicia of reliability, and there-fore we find no clear error in the court's drug quantity calcu-lation."); *United States v. Robinson*, 30 F.3d 774, 786 (7th Cir. 1994).

Freeman next argues that LaSalle's testimony lacked sig-nificant details and was too vague to be reliable. LaSalle spe-cifically testified, however, that he regularly supplied Free-man with one- to two-kilogram shipments of cocaine from around 2001 through April 2006—at first only once a month, but eventually once a week or every other week. This infor-mation was adequate to support the district court's very conservative estimate of the total quantity of cocaine in-volved in Freeman's conspiracy.[3] Moreover, LaSalle's testi-mony was at least partially corroborated by additional evi-dence drawn from surveillance, trash pulls, seizures, and other witness accounts concerning the scope and volume of Freeman's drug trade. *See* Dist. Ct. Dkt. 1397 at 24 ("There is other evidence … So it isn't only LaSalle's testimony that is going into this calculation."). Between LaSalle's testimony and this additional reliable evidence, the district court did

---

[3] As the district court observed, Freeman would still be responsible for more than 8.4 kilograms of cocaine even if LaSalle had given him just one kilogram a month for one year only.

not clearly err in finding by a preponderance that Freeman was responsible for at least 8.4 kilograms of cocaine.

LaSalle's testimony bore sufficient indicia of reliability to be considered at sentencing, and we affirm the district court's drug-quantity findings.

### 2. *Proposed testimony of McClinton*

We review a district court's refusal to grant an evidentiary hearing at sentencing for abuse of discretion. *United States v. Sienkowski*, 359 F.3d 463, 467 (7th Cir. 2004) (citing Fed. R. Crim. P. 32(i)(2)). "An evidentiary hearing need not be afforded on demand because there is no 'right' to a hearing." *United States v. Cantero*, 995 F.2d 1407, 1413 (7th Cir. 1993). Instead, we have held that the Sentencing Guidelines require the district court "to provide a procedure—but not necessarily an evidentiary hearing—in which the parties may argue contested sentencing issues." *Id.* Further, it is well established that "[t]he requirements of due process during a sentencing hearing are met if the defendant is given adequate notice of the proceeding and an opportunity to contest the facts relied upon to support the imposed criminal penalty." *United States v. McCoy*, 770 F.2d 647, 649 (7th Cir. 1985) (internal marks omitted).

Freeman concedes that a district court is not obligated to take testimony at sentencing, but insists that the district judge violated his due process rights by refusing to hear the proposed testimony of David McClinton.[4] Essentially, Free-

---

[4] As a preliminary matter, the parties dispute whether the district court actually "refused" to allow McClinton to testify. We do not reach that issue. Even if the district court did refuse to hear McClinton's testimony, the refusal was not error.

man argues that he needed McClinton's testimony to counter the trial testimony of LaSalle, which provided the principal information relied upon by the district court in making its drug-quantity calculation.

This argument is without merit. Freeman attended the sentencing hearing with counsel, who argued vigorously on his behalf, and the record reflects that the district court carefully considered the arguments of both sides before imposing a sentence. At the hearing, Freeman had ample opportunity to contest the facts relied upon by the court in determining his sentence, including the facts supporting the court's drug-quantity findings. He specifically challenged the reliability of LaSalle's testimony by submitting McClinton's affidavit prior to the hearing, and the court considered the statements made in the affidavit as well as the purpose for which McClinton's testimony concerning those statements was being offered.

The district court was obviously aware that McClinton's affidavit contradicted LaSalle's testimony, and contrary to Freeman's unfounded assertion, the judge did not "fail to take account" of the affidavit simply by choosing not to credit it over the trial testimony of LaSalle. Nor was it an abuse of discretion for the court to find McClinton's proffered testimony unnecessary in light of its finding that LaSalle had already credibly testified on the same subject matter at trial. *See United States v. Earnest*, 129 F.3d 906, 914 (7th Cir. 1997) (sentencing testimony properly found unnecessary where the subject matter of the proposed testimony had already been covered at trial by a witness whom the court found credible).

Under these circumstances, the sentencing hearing was "adequate to allow the district court to exercise its discretion in an enlightened manner." *United States v. Vasquez*, 966 F.2d 254, 260 (7th Cir. 1992). The district court did not violate Freeman's right to due process by finding that McClinton's testimony at the sentencing stage was unnecessary. *See Earnest*, 129 F.3d at 913 ("By receiving defendant's proffer as to what he hoped to prove via [the proposed sentencing] testimony, the trial court did all that was necessary under the circumstances to afford [] due process.").

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the rulings of the district court.